THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORENZO WHEELER, Defendant-Appellant.

Third District   No. 3—87—0241

Opinion filed August 12, 1988.

Robert Agostinelli, of State Appellate Defender's Office of Ottawa, and Lorenzo Wheeler, of Pontiac, *pro se*, for appellant.

Edward F. Masters, State's Attorney, of Joliet (John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Lorenzo Wheeler, an inmate at Stateville Correctional Center, was indicted for the unlawful possession of cannabis. Following a jury trial, he was found guilty and thereafter was sentenced

to a consecutive three-year term of imprisonment.

According to the evidence presented by the State at trial, a guard in the visiting area of the prison observed a white package between defendant's legs as he sat in his wheelchair. The guard told defendant to go into a side room, and when defendant said he was unable to move his legs to get at the package, the guard called for additional help. A package containing 47.1 grams of cannabis was seized as defendant tried to dispose of the package in a wastebasket.

On appeal, the primary issue is whether the trial court erred in requiring the wheelchair-bound defendant to be restrained by leg shackles during trial. The State advised the court that the Department of Corrections considered defendant to be "an escape risk" and that there were only two DOC guards present. The trial court stated that, in the absence of any showing of some physical problem confining defendant to a wheelchair, he was not going to take a risk. The court stated that security in the courthouse was "minimal at best" and that defendant would not be unduly prejudiced because the jury was already going to know that he was a prison inmate because of the nature of the offense.

Defendant contends the trial court abused its discretion in ordering defendant to be partially shackled since there was no reason to believe that defendant might try to escape or that he would pose a threat to the safety of the people in the courtroom or that it was necessary to maintain order during trial. (*People v. Staley* (1977), 67 Ill. 2d 33, 364 N.E.2d 72.) Defendant also contends that the court failed to take into account the factors set out by the Illinois Supreme Court in *People v. Boose* (1977), 66 Ill. 2d 261, 362 N.E.2d 303, which include the seriousness of the present charge, defendant's temperament and character, his age and physical attributes, his past record, his history of past escapes or attempted escapes, evidence of a plan to escape, threats of harm to others, self-destructive tendencies, risk of mob violence, possibility of rescue by other offenders still at large, the size and mood of the audience, the security of the courtroom, and the adequacy of available alternative remedies.

Obviously all of these factors are not going to be present in every case. In *People v. Boose*, the supreme court ruled that it was error to shackle a defendant solely because he was a prison inmate charged with committing a violent crime. Unlike *Boose*, the case before us involves an express finding by the trial court that defendant is an escape risk. Included in the record on appeal are documents which support that conclusion. A psychiatric evaluation indicates that defendant is "overly aggressive, dangerous, completely street and criminally ori-

ented *** with definitely antisocial attitudes." Defendant has a long history of criminal convictions, beginning in 1964, and has never held a job. His prison record includes 102 infractions of rules, some of which involved physical violence. His medical records indicate no reason for his refusal to walk other than "malingering."

■■ ■ The law is clear that a defendant has a right to confront the jury with "the physical indicia of innocence" (*People v. Boose*, 66 Ill. 2d at 265-66, 362 N.E.2d at 305) and that physical restraints should be used only in exceptional circumstances, where a definite risk of escape or violence exists (*People v. Whitson* (1984), 127 Ill. App. 3d 999, 470 N.E.2d 1054). Nonetheless, we cannot say that the trial court abused its discretion in this case. There was a solid basis for accepting the position of the Department of Corrections that defendant was an escape risk, and we will not second-guess the trial judge as to the adequacy of local courtroom security. (See *People v. Whitson* (1984), 127 Ill. App. 3d 999, 470 N.E.2d 1054.) Since only leg restraints were used and were apparently not in view when defendant was seated at the courtroom table, and since defendant was still able to take notes and cooperate with counsel, we will not overturn the trial court's finding of no prejudice. We conclude that the trial court did not err in requiring defendant to remain in leg shackles in the courtroom.

■■ Additionally, we allowed defendant to file a *pro se* brief in which he asserts two other alleged errors. First, defendant, who is black, argues that he was denied effective assistance of counsel because defense counsel failed to object to the all-white jury at the conclusion of *voir dire* or in the trial court. He puts forward two bases for such an objection: (1) that the prosecutor used peremptory challenges to purposefully exclude blacks in violation of his rights as interpreted in *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and (2) that he was denied a trial by a jury representing a fair cross-section of the community, citing *United States ex rel. Yates v. Hardiman* (N.D. Ill. 1987), 656 F. Supp. 1006.

Defense counsel did object to the exclusion of blacks from the jury in the post-trial motion. Defendant's contention that counsel was ineffective thus is baseless. As to the merits of the racial discrimination issue, according to *Batson v. Kentucky*, defendant has the burden of making a *prima facie* showing of purposeful discrimination and, to do so, he must show that the prosecutor has used peremptory challenges to remove members of defendant's race from the jury. (*People v. Williams* (1987), 156 Ill. App. 3d 560.) Here the record discloses that the prosecutor challenged one black juror, not because of race, but be-

cause she lied during *voir dire* when she denied knowing defense counsel. Although the trial court declined to challenge her for cause because he was not convinced she had lied intentionally, the record is clear that the State had a racially neutral reason for excluding this juror. The record does not disclose the race of any other juror or prospective jurors, and defendant does not claim that any other blacks were excluded. Accordingly, defendant has not met his burden of showing "purposeful discrimination."

■ Defendant also mentions that the jury did not represent a fair cross-section of the community as racially composed. The Supreme Court of the United States has held that the fair–cross-section principle has never been used to invalidate the use of either for-cause or peremptory challenges or to require petit juries to reflect the composition of the community at large. (*Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758.) In *Lockhart* the Supreme Court also said that an accused is entitled to a fair cross-section of the community only when the names are put in the box from which the panels are drawn, but "that an extension of the fair cross-section requirement to petit juries would be unworkable and unsound." (476 U.S. at 174, 90 L. Ed. 2d at 148, 106 S. Ct. at 1765.) We conclude that defendant does not have a valid claim for denial of his constitutional rights in this case.

■ Finally, defendant argues that he was denied a fair trial because one of the jurors slept through part of the courtroom proceedings. The only indication in the record of a sleeping juror is a statement attributed to defense counsel:

"Your honor, I don't know if one of our jurors is asleep or not. Everybody is awake?"

No objection was made or evidence presented to indicate that a juror was actually asleep. (See *People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415.) Consequently the record contains nothing to indicate that the juror was in fact sleeping during trial, and we will not reverse a conviction on the basis of speculation.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.