THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CURTIS HENDERSON, Defendant-Appellant.

Third District   No. 3—91—0108

Opinion filed December 18, 1991.

Daniel J. Bute, of Ottawa, for appellant.

Joseph Navarro, State's Attorney, of Ottawa (John X. Breslin and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SLATER delivered the opinion of the court:

Defendant, Curtis Henderson, was convicted of criminal damage to State-supported property (Ill. Rev. Stat. 1989, ch. 38, par. 21—4(a)). The defendant raises the following issues on appeal: (1) whether the trial court erred in ordering that the defendant be restrained with leg shackles throughout the jury trial; (2) whether the trial court erred in granting the State's motion *in limine* preventing the defendant from raising the defense of necessity, and in refusing to instruct the jury on that defense; (3) whether the trial court erred in allowing the State to reopen its case to prove an essential element of the offense; and (4) whether remarks by the prosecutor during closing argument were improper and prejudicial. We affirm.

The record shows that on August 9, 1990, the defendant was an inmate at Sheridan Correctional Center (Sheridan), a facility of the Illinois Department of Corrections. The defendant was classified as a maximum segregation inmate. On the morning of August 9, 1990, the defendant was exercising in the segregation yard at Sheridan. After an hour in the yard, a correctional center employee told the defendant that it was time for him to cuff up and return to his cell. The defendant refused to cuff up, stating that he was entitled to 2½ hours in the yard. After being told that the prison administration had limited his yard time, the defendant picked up a barbell and began breaking windows. He broke 24 window panes before a prison employee sprayed the defendant with mace. The defendant then agreed to cuff up and return to his cell. As he was being cuffed, the defendant spat upon a prison employee. The cost of replacing the windows was approximately $450.

At trial, the defendant was charged with aggravated battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(6)) for spitting on the prison employee and damage to State-supported property (Ill. Rev. Stat. 1989, ch. 38, par. 21—4(a)) for breaking the windows. The jury found the defendant not guilty of aggravated battery and guilty of

criminal damage to State-supported property. He was sentenced to 240 days' imprisonment to run consecutive to his present prison sentence.

We first address the defendant's contention that the trial court erred in ordering that the defendant be restrained with leg shackles throughout the trial. The determination of whether a defendant should remain shackled during a trial is left to the discretion of the trial judge, and that decision will not be reversed absent an abuse of discretion. (*People v. Boose* (1977), 66 Ill. 2d 261, 362 N.E.2d 303.) In *Boose*, the supreme court enumerated factors which the trial judge should consider in determining whether a defendant should be shackled. Among these factors are: (1) the seriousness of the charge; (2) the defendant's temperament, character, age, and physical attributes; (3) his past record; (4) his past escapes and attempted escapes, and evidence of a present plan to escape; (5) threats to harm others or cause a disturbance; (6) the nature and physical security of the courtroom; and (7) the adequacy and availability of alternative remedies. *Boose*, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06.

■ In this case, the trial judge did not abuse his discretion in ordering that the defendant be restrained with leg shackles. At the time of trial, the defendant was serving a sentence for murder and was not eligible for parole until sometime after the year 2020. Furthermore, the defendant had committed 248 prison disciplinary violations since his incarceration. Based on these facts, the trial judge determined that the defendant was a candidate for escape and posed a threat to the safety of the people in the courtroom.

Upon making this determination, the trial judge took steps to insure that the restraints would not prejudice the defendant. The judge ordered that the defendant was not to be handcuffed and that his leg shackles were not to be attached to the floor. He further ordered that skirting be placed around both counsel tables to prevent the jury from seeing the shackles.

Throughout the trial, the defendant was moved in and out of the courtroom and to the witness stand out of the presence of the jury. At the close of the trial, the judge made the following statement for the record:

> "The jury has now retired to the jury room to deliberate its verdict and I am happy to report that there has been no incident in this courtroom where I believe that the jury would have any idea whatsoever that the defendant had shackles on his feet."

We find that the trial judge properly ordered that the defendant be restrained and that the defendant was not prejudiced by that order.

The defendant next argues that the trial court erred in denying the defendant's motion for a directed verdict and allowing the State to reopen its case to prove an element of the offense of criminal damage to State-supported property. At the close of the State's case, the defendant moved for a directed verdict on the criminal damage charge claiming that the State had failed to prove an essential element of the offense, to wit, that the damaged property was supported in whole or in part by State or Federal funds. The trial judge agreed that the State had failed to establish this element, but the judge considered it a technical point and allowed the State to reopen its case to prove that Sheridan was supported by State funds.

Proof that damaged property is supported by State or Federal funds is not a technical point, but rather an essential element of the crime of damage to State-supported property. (*People v. Bartlett* (1988), 175 Ill. App. 3d 686, 530 N.E.2d 90.) However, a court may, in its discretion, allow the State to reopen its case not only for the purpose of proving formalities but also to establish the very facts necessary for a conviction. (*In re J.B.* (1983), 120 Ill. App. 3d 155, 457 N.E.2d 983; *People v. Price* (1972), 8 Ill. App. 3d 158, 289 N.E.2d 280.) In *People v. Faulkner* (1978), 64 Ill. App. 3d 453, 381 N.E.2d 321, the appellate court affirmed the decision of the trial court allowing the State to reopen its case to prove the value of stolen property in a theft prosecution. Accordingly, we find that it was not an abuse of discretion for the trial court to permit the State to reopen its case to prove that Sheridan was supported by State funds.

The defendant's reliance on *People v. Bartlett* (1988), 175 Ill. App. 3d 686, 530 N.E.2d 90, is misplaced. In *Bartlett*, the defendant was charged with criminal damage to State-supported property for wiping human excrement on the wall of a police department holding cell. During the bench trial, the State failed to offer any evidence that the damaged property was supported by State funds. At the close of the State's case, the defendant moved for a directed verdict, arguing that the State had failed to prove an element of the offense. The trial court denied the motion, the defense proceeded with its case, and the defendant was subsequently convicted. The appellate court reversed the conviction, finding that the State had failed to prove an essential element of the crime.

The distinguishing factor between *Bartlett* and the instant case is that in *Bartlett* the record lacked any competent evidence that the damaged property was supported by State or Federal funds. Therefore, the appellate court found that all of the essential elements of the crime were not proven beyond a reasonable doubt. Here, the record clearly shows that the State offered sufficient proof that Sheridan was supported by State funds. The question is whether it was an abuse of discretion for the trial court to allow the State to reopen its case to prove that element. We find that it was not.

The defendant next argues that the trial court erred in granting the State's motion *in limine* preventing the defendant from raising the defense of necessity. At the close of the State's case, the State filed a motion *in limine* requesting that the defendant be prohibited from raising the defense of necessity and from eliciting testimony in support of that defense. Defense counsel argued that the defendant and another inmate intended to testify to the harsh living conditions which maximum segregation inmates are subjected to and that this testimony would show that the defendant was justified in breaking the windows based on the defense of necessity. The trial court granted the State's motion *in limine* to exclude the testimony and prohibit the defendant from raising the necessity defense. The court found that the defense of necessity was inapplicable in this case and that evidence of the defendant's living conditions was not relevant.

A motion *in limine* should be used with caution so as not to deprive a criminal defendant of a legally viable defense. (*People v. Brumfield* (1979), 72 Ill. App. 3d 107, 390 N.E.2d 589.) However, such motions are encouraged in criminal cases to exclude collateral or extraneous matters. (*People v. Clark* (1984), 129 Ill. App. 3d 374, 472 N.E.2d 814.) When an affirmative defense is raised which is unavailable as a matter of law, the trial court may properly grant a motion *in limine* prohibiting the introduction of evidence in support of that defense. (*People v. Downey* (1987), 162 Ill. App. 3d 322, 515 N.E.2d 362.) A reviewing court will not reverse a trial court's grant or denial of a motion *in limine* absent a manifest abuse of discretion. *People v. Williams* (1978), 60 Ill. App. 3d 529, 377 N.E.2d 367.

■ In this case, the trial judge did not abuse his discretion in granting the State's motion. The affirmative defense of necessity is defined by statute in section 7—13 of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, par. 7—13). Section 7—13 provides:

"Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result from his own conduct." (Ill. Rev. Stat. 1989, ch. 38, par. 7—13.)

Conduct which would otherwise be illegal is justified by necessity only if the conduct was the sole reasonable alternative available to the defendant under the circumstances. (*People v. Perez* (1981), 97 Ill. App. 3d 278, 422 N.E.2d 945.) The defendant argues that his rights and privileges had been so severely restricted by the prison authorities that breaking the windows was the only reasonable course of conduct available to him under the circumstances.

In *People v. Whitson* (1984), 127 Ill. App. 3d 999, 470 N.E.2d 1054, the defendant was convicted of unlawful restraint for holding prison guards captive during a prison takeover by inmates. On appeal, the defendant argued that the trial judge erred in refusing to consider the defense of necessity during the bench trial. The defendant contended that the purpose of the takeover was to bring to the attention of the warden the deplorable conditions under which the prisoners were forced to live. The conditions complained of included bugs and vermin, broken windows, cold food, lack of access to the law library and yard time, and showers only once a week. The defendant argued that because of these conditions the court could have concluded that the takeover was necessary in order to avoid greater injury than the offense could reasonably be expected to cause. The appellate court found that the defendant was not in imminent danger of bodily harm when he committed the allegedly necessary act, nor had he exhausted all available alternatives. Furthermore, his presence in a unit which provided fewer privileges than those provided to the general population was a result of the defendant's prior conduct and, therefore, he was not without blame as to his situation. The trial court was correct in refusing to find that the defendant's actions fell within the defense of necessity. *Whitson*, 127 Ill. App. 3d 999, 470 N.E.2d 1054.

Similarly here, the defendant was not in imminent danger of bodily harm when he broke the windows. Breaking the windows was not the proper way for the defendant to file his grievance, much less his sole reasonable alternative. The restrictions on the defendant's rights and privileges were due, at least in part, to the 248 disciplinary violations the defendant has committed since his in-

carceration. As in *Whitson*, the defendant here was not without blame as to his situation.

For the above-stated reasons, we agree with the trial court that the defense of necessity was not a viable defense in this case. Accordingly, we find that the trial judge did not abuse his discretion in granting the State's motion *in limine* and in rejecting defendant's tendered instruction on the defense of necessity.

■ Finally, the defendant contends that the State's closing argument was so inflammatory and prejudicial that the defendant was denied a fair trial. Generally, a prosecutor is allowed wide latitude in closing argument. It is well settled that even though every defendant is entitled to a trial free from improper comments or arguments that engender prejudice, a verdict will not be set aside unless the remarks are clearly prejudicial, affecting the outcome of the case. (*People v. Roberts* (1981), 100 Ill. App. 3d 469, 426 N.E.2d 1104.) In determining whether the remarks constituted prejudicial error, the test is whether the jury would have reached a contrary verdict had the improper remarks not been made. *People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68.

The defendant cites four allegedly prejudicial statements made by the prosecutor during closing argument. The first two statements dealt with inferences drawn from the defendant's testimony. Such comments are proper argument. (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746.) The third statement was an improper comment on an instruction which the judge was not going to give to the jury. The fourth statement was an improper appeal to the jury to support prison employees by returning a guilty verdict. While we do not condone the last two statements cited by the defendant, we find no substantial error, nor do we find that the cumulative impact of any errors in closing argument alleged by the defendant deprived him of a fair trial.

For the reasons stated above, we affirm the judgment and sentence of the circuit court.

Affirmed.

STOUDER, P.J., and McCUSKEY, J., concur.