# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Harding*, **2012 IL App (2d) 101011**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACK D. HARDING, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-1011 |
| Filed | February 21, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for domestic battery was affirmed, notwithstanding his contention that it was plain error to have a bench trial while he was shackled and in prison attire without holding a hearing under *Boose*, since the error was invited when the trial court agreed to the request of defendant's counsel to have one or both of defendant's hands unshackled and plain-error review was precluded. |
| Decision Under Review | Appeal from the Circuit Court of Lee County, No. 10-CF-123; the Hon. Ronald M. Jacobson, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Carol L. Anfinson, of Aurora, for appellant.

Henry S. Dixon, State's Attorney, of Dixon (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Bowman and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Jack D. Harding, appeals from his conviction of domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2008)). He contends that it was plain error for the court to hold a bench trial while he appeared shackled and in prison attire, without having held a hearing under *People v. Boose*, 66 Ill. 2d 261, 265 (1977). The State contends that the error was invited when defense counsel sought only to have one or both hands unshackled and the court agreed. In the alternative, the State contends that the evidence was not closely balanced under the first prong of the plain-error test. We determine that the error was invited, foreclosing plain-error review. Accordingly, we affirm.

¶ 2          I. BACKGROUND

¶ 3 On May 19, 2010, defendant was charged with two counts of domestic battery. Count I alleged that he made physical contact of an insulting or provoking nature with his wife, Karen Harding. Count II alleged that he caused her bodily harm. Bail was initially set at $5,000, but it was lowered at a later hearing, with the condition that defendant stay away from his wife and wear a monitoring bracelet. Defendant never posted bail.

¶ 4 On August 3, 2010, a bench trial was held. Defendant appeared, wearing prison attire and with his legs and hands shackled. Before trial, defendant's counsel told the court, "I am requesting the Defendant, in order to participate meaningfully in the trial, be allowed to have his hand shackles removed. He can keep his feet shackles on and that I be permitted to hand him this pen." The court asked the bailiff for an opinion on the matter, and he said that he had discussed the matter with counsel and would not have a problem if one hand were freed. The court then agreed and allowed one hand to be freed. There was no objection to freeing only one hand or to the leg shackles or prison attire. At trial, defendant was identified by several witnesses as the person wearing "black and white stripes" or "the jumpsuit."

¶ 5 Defendant's wife testified that, on May 14, 2010, she went with defendant to a bar in

Dixon, Illinois, where she drank beer and shots of tequila. She did not remember leaving the bar, but remembered falling on her knees and waking up on her back in a parking lot.

¶ 6    Nicholas Von Schrott, a paramedic, testified that he was at the bar that night and witnessed an altercation in the parking lot. He stated that he had an unobstructed view of defendant shouting at his wife for about 10 seconds, and then he saw defendant punch his wife in the face with a closed fist, causing her to fall to the ground on her back. Von Schrott then stepped in front of defendant, and other bystanders assisted him in moving defendant away from his wife. Von Schrott next attended to defendant's wife, who he said was moaning and still lying on her back.

¶ 7    In a May 15, 2009, statement to police, Von Schrott said that, after defendant punched his wife, causing her to fall to the ground, defendant jumped on top of her and punched her again on the back of the head. At trial, Von Schrott said that his statement to police would be the most accurate, because his testimony at trial was based on his recollection after many months had passed. Von Schrott also could not recall whose vehicle he arrived in, how many bars he went to, whom he drank with, or whom he rode home with. Von Schrott admitted that he had been drinking that evening, but he also stated that he did not drink to the point of intoxication and that he would have been comfortable driving.

¶ 8    Scott Douglas Romine, a paramedic who was with Von Schrott at the bar, testified that he arrived after the altercation between defendant and his wife and saw Von Schrott telling defendant to get back, while defendant tried to push through a crowd of people toward his wife. Romine described defendant's demeanor as confrontational and aggressive.

¶ 9    Officer Chris Plancho of the Dixon police department testified that he responded to a call about an altercation in a parking lot and found defendant's wife on the ground on her stomach. She had dirt on her shirt, arms, and face and was crying and smelled of alcohol. Plancho testified that he gave defendant's wife a ride home and observed that she was heavily intoxicated and staggering. Plancho did not observe any red marks on her or any bruising or injuries. Another officer arrested defendant, who denied that he struck his wife.

¶ 10    After the close of the State's case, the court granted defendant's motion for a finding in his favor on count I. After trial, the court found him guilty of count II. In doing so, the court stated that the case "rises or falls on Mr. Von Schrott's testimony," as he was the only person who testified that defendant punched his wife. The court specifically expressed concern that there were discrepancies in Von Schrott's testimony, and it said that there were "serious concerns" about the accuracy of his memories. Ultimately, however, the court decided that it believed Von Schrott's testimony that defendant punched his wife. Accordingly, the court found defendant guilty. Defendant was sentenced to four years' incarceration. He did not make any posttrial motions, and he appeals.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant contends that it was plain error for the court to hear the trial while he appeared in prison attire and shackles, which he argues denied him his right to a fair trial. Defendant concedes that he failed to object at trial, thus limiting review of the issue to plain error. At oral argument defendant also conceded that, to the extent leg shackles are at issue, the error

was invited and is not subject to plain-error review.

¶ 13   "In *People v. Boose*, 66 Ill. 2d 261, 265 (1977), the court held that the shackling of an accused should be avoided if possible because shackling: (1) tends to prejudice the jury against the accused; (2) restricts the accused's ability to assist his counsel during trial; and (3) offends the dignity of the judicial process." *In re Jonathan C.B.*, 2011 IL 107750, ¶ 67. "Therefore, *Boose* held that an accused should not be kept in restraints while in court and in the presence of the jury unless there is a manifest need for such restraints." *Id.* (citing *Boose*, 66 Ill. 2d at 265-66). "The *Boose* court set forth 13 factors to be considered in deciding whether there is a manifest need to restrain a defendant at trial: (1) the seriousness of the offense; (2) the defendant's temperament and character; (3) the defendant's age and physical characteristics; (4) the defendant's past record; (5) any past escapes or attempted escapes; (6) evidence of a present plan of escape by the defendant; (7) any threats by the defendant to harm others or create a disturbance; (8) evidence of self-destructive tendencies; (9) the risk of mob violence or of attempted revenge by others; (10) the possibility of rescue attempts by any co-offenders at large; (11) the size and mood of the audience; (12) the nature and physical security of the courtroom; and (13) the availability of alternative remedies." *People v. Clark*, 406 Ill. App. 3d 622, 635 (2010) (citing *Boose*, 66 Ill. 2d at 266-67). The principles from *Boose* have recently been codified in Illinois Supreme Court Rule 430 (eff. July 1, 2010), which mandates in part:

"An accused shall not be placed in restraint of any form unless there is a manifest need for restraint to protect the security of the court, the proceedings, or to prevent escape. Persons charged with a criminal offense are presumed innocent until otherwise proven guilty and are entitled to participate in their defense as free persons before the jury or bench. Any deviation from this right shall be based on evidence specifically considered by the trial court on a case-by-case basis."

¶ 14   The record should clearly disclose the reason underlying the trial court's decision for the shackling and show that the defendant's attorney was given an opportunity to oppose this decision. *Boose*, 66 Ill. 2d at 266-67. These principles also apply to bench trials, as shackling restricts the ability of a defendant to cooperate with his attorney and to assist in his defense and jeopardizes the presumption of innocence. *In re Staley*, 67 Ill. 2d 33, 37 (1977). The appearance in prison attire has generally been addressed under the same reasoning as in *Boose*, often in conjunction with circumstances in which the defendant was also shackled. See *id.*; *People v. Tedrick*, 377 Ill. App. 3d 926, 928 (2007).

¶ 15   Here, the court erred when it failed to place on the record its reasons for the shackling and the appearance in prison attire. Indeed, it appears that the court failed to consider the factors from *Boose* at all. However, defendant did not object at trial. He now contends that the matter was plain error, because the evidence was closely balanced and the error alone threatened to tip the scales of justice against him, while the State argues that it was invited error, which is not subject to plain-error analysis.

¶ 16   A defendant's failure to object at trial and to raise an issue in a posttrial motion operates as a forfeiture of the right to raise the issue as a ground for reversal on review. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The plain-error rule is a narrow and limited exception

-4-

and is applied to ameliorate the harshness of strict application of the forfeiture rule. *Id.* Under the plain-error rule, a reviewing court may consider a forfeited claim when: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "In plain-error review, the burden of persuasion rests with the defendant." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 17    However, plain-error review is forfeited when the defendant invites the error. "[A] defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *Harvey*, 211 Ill. 2d at 385 (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). The issue is sometimes referred to as one of estoppel. *Id.* That is, under the doctrine of invited error, a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. *Id.* To allow a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend notions of fair play and encourage defendants to become duplicitous. *Id.* It would also deprive the State of the opportunity to cure the alleged defect. *People v. Bush*, 214 Ill. 2d 318, 332 (2005). Thus, these principles also apply to preclude plain-error analysis. Where the defendant invited the error, our supreme court has declined to address any related plain-error claim. See, *e.g.*, *People v. Patrick*, 233 Ill. 2d 62, 76 (2009).

¶ 18    The invited-error rule was applied in part by the Third District to a case involving shackling in *People v. Woods*, 373 Ill. App. 3d 171 (2007). There, on two occasions, counsel for the defendant asked that handcuffs be removed so that the defendant could take notes during trial. At the time of the first request, defense counsel suggested that doing so was permissible because the defendant's legs would remain shackled, and the court allowed the handcuffs to be removed. On the second occasion, counsel asked that the defendant have one or both handcuffs removed and the court allowed one. The Third District held that any error in regard to the handcuffs was invited, but the court then addressed whether it was plain error for the court to fail to remove the leg shackles.

¶ 19    We agree with the State that the error was invited. Although *Woods* considered only a specific part of the issue of restraints to be invited error, the invited-error rule contemplates that a defendant may not request to proceed in one manner and later contend on appeal that the course of action was in error. The issue of appearance in shackles and prison attire is generally analyzed as a whole, as the overriding concern is a fair trial based on how the defendant appears and his or her ability to assist in the defense. Thus, we decline to part and parcel out individual items of restraint or clothing as the court did in *Woods*.

¶ 20    Here, defendant specifically concedes that the issue as it pertains to the leg shackles was invited error, as trial counsel specifically stated that he could keep those on. Trial counsel then asked that the hand shackles be removed so that defendant could "participate meaningfully in the trial." Counsel at some point discussed the matter with the bailiff, who stated no objection to proceeding with one of defendant's hands freed. The court agreed to allow one hand to be freed, and the record is silent as to whether the shackle on the other

hand was physically attached to anything. Likewise, the record does not include the conversation between counsel and the bailiff. In any event, what is clear is that counsel specifically asked that defendant be freed in a way that would allow him to participate meaningfully in the trial, by holding a pen, and he was granted that request. By not asking for more, such as the removal of all shackles and prison attire, and in light of the deficiencies in the record, we view counsel's request as specifically limited to a request to remove enough items so that defendant could meaningfully participate in the trial.

¶ 21    One of the key reasons for a *Boose* hearing is to allow counsel to oppose the defendant's appearance in restraints and prison garb. By specifically raising the issue in a limited form, counsel invited the court to address the matter in that same limited form. Here, counsel made a limited request, that request was granted without further objection, and defendant cannot now contend that it was error for the court to grant that request without going further.

¶ 22    Because the error was invited, we need not address plain error.[1] However, we note that the issue of restraints can be troubling, especially in light of an incomplete record, as recently seen in *In re Jonathan C.B.*, a case involving shackling and plain error. While *In re Jonathan C.B.* is not applicable to our decision here, it illustrates the difficulties an appellate court faces when a defendant appears in shackles without a hearing on the issue. Thus, when a trial court is presented with a defendant who appears in prison attire and restraints, even for a bench trial, and even when counsel agrees to the removal of only a portion of the restraints, the best course of action is to hold a *Boose* hearing so that the reasons for the defendant's appearance and the extent of any agreement can be considered by the court and placed on the record.

¶ 23                                III. CONCLUSION

¶ 24    Trial counsel invited the error raised on appeal, precluding plain-error review. Accordingly, the judgment of the circuit court of Lee County is affirmed.

¶ 25    Affirmed.

---

[1]Although we need not address plain error, we observe that there have been recent developments in how the first prong of the plain-error test is addressed in regard to a showing of prejudice. The State, citing to the recent case of *People v. White*, 2011 IL 109689, contends that the defendant must show specific prejudice. But *White* did not overrule the basic rule from *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005), that, for the first prong, the defendant need show only that the evidence was so close that the error "severely threatened" to tip the scales of justice; that is, given the closeness of the evidence, the error might have produced the outcome. Thus, the principles from *Herron* still apply to the first prong of plain-error review. See *People v. Vesey*, 2011 IL App (3d) 090570, ¶ 19 (discussing that *White* did not overrule *Herron*). Nor did the court's recent decision in *People v. Adams*, 2012 IL 111168, overrule *Herron*.